Sixty-Third and Halsted Realty Company, Appellant, v. Goldblatt Bros., Inc., Appellee.
Goldblatt Bros., Inc., Appellant, v. Sixty-Third and Halsted Realty Company, Appellee. Chicago Title and Trust Company, Appellant.

Gen. Nos. 45,266, 45,361.

Opinion filed January 29, 1951. Rehearing denied February 9, 1951. Released for publication March 2, 1951.

CLAUSEN, HIRSH & MILLER and NASH, AHERN & McNALLY, all of Chicago, for certain appellant.

ECKHART, KLEIN, McSWAIN & CAMPBELL, of Chicago, for certain other appellant; JOHN NEAL CAMPBELL and HOWARD F. HUSUM, both of Chicago, of counsel.

PRITZKER, PRITZKER & CLINTON, of Chicago, for appellee; STANFORD CLINTON and ROBERT A. SPRECHER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

In Case Number 45361, the plaintiff, Goldblatt Bros., Inc., sublessee of the premises at the northwest corner of 63rd and Halsted streets, Chicago (hereafter called sublessee), and defendant Chicago Title and Trust

Company, as trustee, present fee owner and underlying lessor of the premises (hereafter called fee owner), appealed separately to the Supreme Court from a decree of the circuit court of Cook county declaring that the sublessee has the right and is obligated under its sublease from defendant Sixty-Third and Halsted Realty Company (hereafter called sublessor) and the underlying leases, to build a single building on the demised premises.

In Case Number 45266, sublessor appeals from a summary judgment of the superior court of Cook county, entered during the pendency of the foregoing appeals in the Supreme Court, denying its claim for rent and taxes accruing under the sublease referred to above amounting to $53,402.34, finding, contrary to the decree of the circuit court, that the erection of a single building covering the demised premises would violate and breach the provision of the underlying leases, and decreeing that the sublease as amended be rescinded, canceled, set aside and held for naught. The fee owner did not follow its appeal. The record was filed in the Supreme Court by sublessee. On its motion the case was transferred to this court. Over objection of the sublessor, and several months after the expiration of the time for filing its brief in the Supreme Court, we permitted the fee owner to prosecute its appeal here. The two appeals were consolidated.

The demised premises, fronting 116 feet on Halsted street and 139 feet on 63rd street, were acquired by William Bromstedt, Jr., in 1885 and 1886. On December 2, 1899, he conveyed the north 22 1/3 feet of the 116 feet fronting on Halsted street (hereafter sometimes referred to as Parcel 2) to a grantee who conveyed it to Catherine L. Bromstedt, wife of William, by deed dated December 8, 1899. May 1, 1909, Bromstedt leased the entire premises—that owned by himself and his wife—for a term expiring April 30, 1924. By the exer-

cise of an option in the lease the term was extended to April 30, 1934.

On March 6, 1922, Bromstedt leased the south 93 2/3 feet of the 116 feet fronting on Halsted street (hereafter sometimes called Parcel 1) to Lenz, Dehning and Meyn for a term of 99 years commencing May 1, 1934. On March 9, 1922, Bromstedt, as conservator of his wife Catherine L. Bromstedt, an insane person, pursuant to an order of the probate court of Cook county, executed a lease to Lenz, Dehning and Meyn of the north 22 1/3 feet of the Halsted street frontage for 99 years commencing May 1, 1934. Except for the description of the premises demised and the names of the lessor, these leases are identical in all material provisions. Authorization of the lease by Bromstedt as conservator was procured on his verified petition, and the recommendation of his attorney endorsed thereon. In his petition Bromstedt stated that the property of his ward was improved with a three-story brick building, used for commercial purposes; that the property was a gift from the petitioner, who owns the south and adjoining 93 and a fraction feet; that he had entered into an undertaking with Lenz, Dehning and Meyn whereby he agreed to lease the premises owned by him and to execute, subject to the approval of the court, a lease of the property of his ward for 99 years, beginning at the expiration of the Schoenfeld lease, May 1, 1934, "at an annual rental for the entire property, both that owned by him in his own right and that of his ward," of $20,000 for the first five years and $25,000 per year thereafter; that in addition to these rentals the lessees have agreed to pay taxes, etc., and are required to "maintain a building upon the required (sic) premises of not less in value than the structures then upon the premises at the time of the beginning of the term"; that while the rental value of his property is greater than the rental value of the property of

his ward, "he is willing that that portion of the rental to be paid by the lessees under said lease shall be adjusted on the basis of the Halsted street frontage so that the ward's property shall receive proportionately the same rate as that which he owns in his own right"; that "by making this lease at this time and in connection with his property, his ward's property will produce a greater net income than if the same was rented separate and apart from that which petitioner owns in his own right." March 22, 1928, this lease was ratified and confirmed in all its terms by a decree of the circuit court of Cook county in which the court found that the foregoing statements in the petition of Bromstedt were true when made at the time of the entry of the decree. Sublessor is successor in interest to Lenz, Dehning and Meyn under both leases, herein referred to as underlying leases. Upon the death of William and Catherine L. Bromstedt, the three children born to them and two children of William by a former marriage (hereafter called beneficial owners) became the fee owners of the demised premises. In December 1939, they caused the legal title to be conveyed to the Chicago Title and Trust Company as trustee under a trust agreement whereby each of them became an equitable owner of an undivided fifth part of the real property and entitled to a fifth part of the net income therefrom.

The sublease from the sublessor to sublessee dated May 1, 1934, is for an initial term of five years ending April 30, 1939, with an option for an additional term of 94 years (less one day), commencing May 1, 1939 and ending April 29, 2033. The option was exercised. Sublessee thereupon became obligated to fully and completely erect on the demised premises, not later than the 30th day of April 1941, a building which "shall be a new building at least three stories in height, . . . adapted for commercial purposes, and shall cover sub-

stantially the whole of the demised premises." This requirement was modified at the request of the sublessee by two supplemental agreements or amendments, extending the time to commence the construction of the building to December 31, 1948, or thereafter, in the event labor, materials and equipment necessary to construct the building should not be available as of December 31, 1948. Sublessee agreed to fully erect and complete the building within twelve months after construction is commenced. Negotiations for the sublease began in April 1933. The underlying leases were in the possession of the attorneys for sublessee not later than March 23, 1934. The sublease recites that the sublessee's title to the demised premises is under and by virtue of the underlying leases, and the parties expressly agree that "This lease is in all respects subject and subordinate to the terms of the underlying leases." Each underlying lease contains the following provisions: "The lessees shall have the right to. change, repair, remodel, add to or take from the structures upon the said premises during the term herein created, provided, however, that such remodeling, adding to or changing said building shall not impair or diminish the value of said premises"; and "It is expressly understood and agreed that the lessees may erect or construct upon said demised premises a new building of a permanent nature, suitable for commercial purposes, which shall be at least three stories in height, and may wreck and remove the building on the premises."

In the latter part of 1948, the sublessee approached the sublessor with the suggestion that the building requirement be waived for ten years, stating that due to financial conditions and the then credit buying it would not be good policy for Goldblatts to invest money in the capital improvement required by the sublease. Sublessee also asked that it be permitted to put up a one-floor

and basement building instead of the three-story building specified in the lease. Sublessor did not react favorably to these suggestions. Sublessee submitted plans for a two-story building. Plans and specifications for a building 139 feet on 63rd street by 165 feet on Halsted street, costing more than a million dollars and consisting of three stories on the demised premises and two stories on the adjoining 50 feet to the north, were submitted later. These plans made provision for the ultimate separation of the portion of the building north of the demised premises by providing two sets of columns, beams and girders, each set of columns being within the respective lot lines. Sublessor objected to the plans because there was no dividing wall between the portion of the building on the demised premises and on the 50 feet to the north, and because certain building services were to be in the portion of the building to the north. The beneficial owners objected because the plans contemplated one building on the demised premises and the 50 feet immediately to the north. They also contended that the underlying leases provided for the erection and construction of a separate building on each parcel constituting the demised premises.

March 1, 1949, shortly after objections were raised to the plans submitted, sublessee filed its complaint alleging that, as sublessor well knew, sublessee was at the time of making the sublease engaged in the operation of large retail department stores and that its sole purpose in making the sublease was to erect a single building on the premises suitable for the operation of a large retail department store; that the sublease was executed in the mutual belief of the sublessor and sublessee that a single unit building could be constructed; that sublessee is advised that the position of the beneficial owners that the underlying leases require construction of two separate buildings is well founded;

that the sublessee has fulfilled all of the obligations under the sublease and stands ready, willing and able to satisfy and comply with any final adjudication of the court. The material part of the prayer of the complaint is for a declaratory judgment that the sublease is a nullity and that it be canceled; that if this relief should be denied, that the court declare that the sublessee has a right under the sublease and the underlying leases to complete a single building on the leased premises. By its answer, as amended, sublessor denies any representation or inducement to sublessee in respect to its right to build a single building, asserts that sublessee has the right and is obligated under the sublease to build one building on the premises, and that if two buildings must be built, two structures can be erected in such manner as to substantially, and for all practical purposes, comply with the requirements and still achieve the alleged purposes and objects of the sublessee. The fee owner answered, insisting that a complete building should be erected on each parcel. The case was referred to a master, who, with the consent of all the parties, inspected the premises. His report was approved and a decree entered declaring that sublessee had a right and was obligated to build a single building on the premises.

Pending the appeals from this decree, sublessor brought suit in the superior court for rent, taxes, etc., owing under the sublease. The sublessee filed an answer and counterclaim, which the court finds in its decree raised issues "identical with those involved and adjudicated" in the circuit court proceeding. It moved for a summary judgment. Sublessor moved to strike the motion for summary judgment mainly on the ground that the prior decree in the circuit court was *res judicata* of sublessee's claims. This motion was denied. The court held that the appeal of the sublessee was "still pending and undisposed of, and therefore the

decree entered in the Circuit court of Cook county is not finally adjudicated.'' It also held, upon the pleadings and motion before it, that the erection of a single building covering Parcels 1 and 2 would violate and breach the provisions of the ground leases. June 29, 1950, a decree was entered dismissing the complaint of sublessor, rescinding, canceling, setting aside and holding for naught the sublease between sublessor and sublessee, and directing an account as to the difference, if any, between the reasonable value of the use and occupation of the premises from May 1, 1934 and the amounts paid by sublessee under the sublease. Sublessee claims this difference is in excess of $350,000. On the same day the cause was referred to a master in chancery to state the account and report on or before August 10, 1950. Sublessor appealed.

■■■■■ Sublessee seeks to evade its obligations under the sublease by asserting an alleged mutual mistake of law in the construction of the provisions of the underlying leases permitting but not requiring the erection of ''a new building of a permanent nature suitable for commercial purposes.'' The primary object in construing these leases is to ascertain and give effect to the intention of the parties. In doing this the court looks to the substance of the transaction and the circumstances of the parties rather than the form of the agreements. *Ogden v. Stevens,* 241 Ill. 556. It endeavors to place itself as nearly as possible in the position of the parties by considering extraneous evidence of facts they had in view (*Weger v. Robinson Nash Motor Co.,* 340 Ill. 81, 91), including the state of the property involved and the objects to be attained (*Law v. Kane,* 384 Ill. 591, 596). Reference will also be had to prior agreements and circumstances preceding the execution of the leases in order to determine the intention of the parties in their use of the word ''building.'' *Koelmel v. Kaelin,* 374 Ill. 204, 210. There is no single

restricted and well accepted definition of the word. *Great Eastern Casualty Co. v. Blackwelder,* 21 Ga. App. 586, 94 S. E. 843, and cases cited. A structure is a building even though the sides are not enclosed or walled in. *Bennett v. G. T. O'Maley Tractor Co.,* 209 Mo. App. 619; *Watson v. Cotton,* 57 E. C. L. 51, 136 Eng. Reprints 792.

In 1922, when the underlying leases were executed, the entire premises (Parcels 1 and 2) were demised under a single lease, executed by Bromstedt in 1909 for a term ending April 30, 1934. They were improved by a three-story building on the corner extending 50 feet north on Halsted street, a three-story building (called the Bromstedt Block) immediately north and adjoining the corner building, extending north on Halsted street 66 feet to the north boundary line of the demised premises, and a two-story building on 63rd street immediately west and adjoining the corner building. The three buildings are still on the premises. At all times they have been heated by a central heating plant. Externally the Bromstedt Block has the appearance of a single building with nothing to indicate a dividing wall between the properties of the two landowners. Access to the second and third floors has always been by a single entrance and stairway at the northerly line of the building. The master found, and the evidence supports his finding, that prior to 1922, the dividing wall between Parcels 1 and 2 had been so demolished that for all practical purposes the building was a single undivided building. He further found from his inspection of the premises that this condition has not been changed.

There is nothing to indicate an intention of the parties to the underlying leases to change the conditions existing in 1922 and erect separate buildings on the two parcels. Bromstedt negotiated the leases for the lessors. In his petition to the probate court for

authority to execute the lease for his ward he placed a construction on the transaction. This construction was approved by the probate court in authorizing the execution of the lease by Bromstedt as conservator, and by the circuit court six years later in ratifying and confirming the lease. Regard will be given to that construction in determining the intention of the parties. *Cedar Park Cemetery Ass'n, Inc. v. Village of Calumet Park*, 398 Ill. 324. As shown by Bromstedt's petition, Lenz, Dehning and Meyn were leasing the 116 feet fronting on Halsted street as an entirety and giving therefor a single consideration—an annual rental for the entire premises of $20,000 for the first five years and $25,000 per year thereafter, plus the payment of taxes, etc., and an obligation to "maintain a building upon the required (sic) premises of not less in value than the structures then upon the premises at the time of the beginning of the term." Execution of two leases and apportionment of the rent was for the benefit and convenience of the lessors. This apportionment was not based on the rental value of the respective parcels leased separately, but was on a basis giving Bromstedt's ward the same rental per foot of Halsted street frontage as he received for the more valuable corner property, and thereby producing for her a greater net income than if her property had been rented separately and apart from Bromstedt's property. Catherine Bromstedt could not, and her successors in interest claiming by inheritance cannot, equitably receive this increased rental from the lessees (sublessor herein) while insisting that the lease from the conservator is to be construed separate and apart from the lease of Bromstedt individually. The lessees in the underlying leases are not obligated to enhance the value of the demised premises. They are permitted but not required to erect a new building at least three stories in height. No other restriction is placed on the

400

building to be erected so long as the value of the premises is not impaired or diminished. The erection of a single building covering the entire 116 feet on Halsted street would put on the premises a new and modern building similar in character to that on the premises in 1934—an undivided building extending over both parcels, but of greater value. The great preponderance of the evidence establishes that the erection of a building according to the plans and specifications submitted would enhance the value of each parcel. Under the existing trust agreement each of the beneficial owners has an undivided one-fifth interest in the entire premises and cannot be injured. The trial court did not err in holding that the sublessor had the right under the underlying leases to erect a single unit building on the entire premises, and that it was the right and duty of the sublessee under the sublease to erect such a building on the premises demised by the sublease.

■ Is sublessee in this court with proper motives? It asserts that it is ready, willing and able to fulfill its obligation—the erection of a new building. Its actions contradict its words. There is uncontroverted evidence that in 1948, it sought a moratorium of ten years on all building and asked to be permitted to erect a single-story and basement building instead of the three-story building required by its contract. On the ground that it feared injunction and damage suits it filed its complaint for the construction of the lease. Instead of standing by as a stakeholder in an interpleader action, neutral as between its sublessor and the fee owner, it allied itself with the fee owner and vigorously contended that the underlying leases required separate buildings on each parcel. When the decree was entered construing the leases to permit a single building on the entire premises, it appealed, protesting that the court erred in sustaining its right to fulfill its obligations under the sublease. When the

fee owner abandoned its appeal to the Supreme Court, the sublessee filed a record in that court, keeping the appeal alive. On transfer of the case to this court it again joined with the fee owner in aggressively upholding the latter's contention. Equitable jurisdiction to rescind a contract is a shield relieving the innocent from oppression and hardship. It is never exercised as a sword to cut the bonds of a contract fairly entered into and permit escape from its obligations and the recapture of money previously paid in fulfilment of its terms.

The judgment and decree entered in the superior court is erroneous. The trial court correctly found that the answer and counterclaim of sublessee raised issues "identical with that involved and adjudicated" in the circuit court proceeding. Sublessor and sublessee were parties in both actions. The law is clearly established that a judgment and decree pending on appeal is *res judicata*. *People ex rel. Arns v. Rickert,* 159 Ill. 496. This rule has not been changed by the present Civil Practice Act [Ill. Stats. Ann. 1949, ch. 110, par. 125 *et seq.;* Jones Ill. Stats. Ann. 104.001 *et seq.*], for under it, as before, the appeal is a continuation of the action in the trial court. *First Nat. Bank of Jonesboro v. Road Dist. No. 8,* 389 Ill. 156.

The decree of the circuit court is affirmed. The judgment and decree of the superior court is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Decree of circuit court affirmed. Judgment and decree of superior court reversed and remanded.*

TUOHY and FEINBERG, JJ., concur.