### William J. CROT and Linda Crot, Plaintiffs,

v.

### Jane BYRNE, the City of Chicago, John Donovan, and John Winkler, Defendants.

No. 83 C 7230.

United States District Court, N.D. Illinois, E.D.

Sept. 29, 1986.

William F. Fitzpatrick, Jr., Callahan, Fitzpatrick, Hirst & Lakoma, Oak Lawn, Ill., for plaintiffs.

Jerome H. Torshen, Robert J. Slobig, Jerome H. Torshen, Ltd., Chicago, Ill., for defendant Winkler.

Donald Hubert, Donald Hubert and Associates, Chicago, Ill., for all other defendants.

## MEMORANDUM OPINION
## AND ORDER

ROVNER, District Judge.

William Crot, formerly the Assistant Superintendent of the Bureau of Equipment Services of the Department of Streets and Sanitation of the City of Chicago, was fired from that position on October 16, 1981. The genesis of this action is Mr. Crot's claim that his firing was politically motivated.

Mr. Crot and his wife, Linda Crot, filed a five-count complaint in this Court on October 14, 1983. Count I of the complaint alleges that Mr. Crot's firing was in violation of the First and Fourteenth Amendments of the United States Constitution and seeks redress pursuant to 42 U.S.C. §§ 1983 and 1985(3). The Section 1985(3) claims were dismissed by Judge Grady on March 15, 1984. Count I is directed to defendants the City of Chicago; Jane Byrne, at all times relevant the Mayor of Chicago; John Donovan, at all times relevant Commissioner of the Department of Streets and Sanitation, and John Winkler, at all times relevant William Crot's immediate supervisor within the Bureau of Equipment Services.

Count II of the complaint alleged a violation of the *Shakman* consent decree. *See, Shakman v. Democratic Organization of Cook County,* No. 69 C 2145 (N.D.Ill.) (Bua, J.). Judge Grady granted the plaintiffs' motion to voluntarily dismiss Count II on March 15, 1984.

Counts III, IV and V of the complaint state pendent state law claims. Count III states a claim by William Crot for infliction of emotional distress and is directed to all four defendants. Count V, also brought by William Crot, states a claim against the individual defendants for intentional interference with Mr. Crot's employment relationship with the City of Chicago. Count IV of the complaint is brought by Linda Crot and alleges loss of consortium. All four defendants are named within the count.

Several motions presently are pending before the Court: motions for summary judgment brought by defendants Chicago, Byrne Donovan and Winkler; defendants' motion to strike portions of plaintiffs' statement of genuine issues ("motion to strike statement"); defendants' motion to strike portions of the affidavit of William F. Fitzpatrick ("motion to strike affidavit"), and the motion of Chicago, Byrne and Donovan to reconsider the trial date setting, or in the alternative, to bifurcate the issues of

liability and damages ("motion to reconsider trial date.")

## I

William Crot is allied politically with Richard J. Daley, who defendants admit is a bitter political rival of former Mayor Byrne. Mr. Crot alleges that, as a result of his political activities on behalf of Mr. Daley, the individual defendants embarked upon a course of activities designed to embarrass and humiliate him and thereby induce him to resign his position. When he did not resign, Crot alleges, the individual defendants caused the City of Chicago's Office of Municipal Investigation ("OMI") to investigate Crot in order to provide grounds for his termination.

On October 16, 1981, Crot was handed a letter of termination. On or about November 11, 1981, Mr. Crot suffered a serious stroke. He further alleges that the stroke was a result of the stress caused by the defendants' conduct and his termination.

The defendants deny any political motivation underlying Mr. Crot's termination. They contend that his termination was based upon the OMI investigation and report, which sustained allegations of consumption of alcoholic beverages while on duty and excessive absence or tardiness.

On April 27, 1982, Mr. Crot filed an Application for Adjustment of Claim before the Illinois Industrial Commission, claiming that the stroke he suffered in November, 1981 resulted from work-related stress. The application sought the payment of workers' compensation benefits from the City of Chicago. On January 24, 1983, an Arbitrator for the Industrial Commission denied the claim. The Arbitrator's decision was adopted by the Industrial Commission on May 5, 1986.

## II

The defendants have moved for summary judgment upon the three pendent state claims on the ground that notice, pursuant to Ill.Ann.Stat. Ch. 85, ¶ 8–102 (Smith-Hurd pocket part 1986), was not given by the plaintiffs. Paragraph 8–102 states:

> Within 1 year from the date that the injury or cause of action, referred to in Sections 8–101, 8–102 and 8–103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any.

Pursuant to paragraph 8–103, failure to give the requisite notice under paragraph 8–102 bars any suit for recovery upon the alleged injury.

Plaintiffs' admit that notice pursuant to paragraph 8–102 was not given. Plaintiffs raise four arguments, however, in support of their position that their failure to serve notice should not bar their state law claims. First, plaintiffs contend that paragraph 8–102 is meant to apply only to "garden variety" torts. However one defines a "garden variety" tort, it is well established that "[n]otice is required under the Act for any civil action commenced against a local public entity or any of its employees, whether involving negligence or willful and wanton conduct." *Zagar v. Health & Hospitals Governing Commission of Cook County*, 83 Ill.App.3d 894, 39 Ill.Dec. 112, 116, 404 N.E.2d 496, 500 (1st Dist.1980). *See also,*

*Panko v. County of Cook,* 42 Ill.App.3d 912, 1 Ill.Dec. 577, 563, 356 N.E.2d 859, 864 (1st Dist.1976). Thus, plaintiffs' first argument is wholly without merit.

Plaintiffs' second contention is that a material issue of fact exists concerning whether the individual defendants acted within the scope of their employment and are therefore covered under the terms of paragraph 8–102. The sole fact noted by plaintiffs to support this contention is that the individual defendants denied paragraph 20 of Counts III and IV of the complaint, which state that at all times relevant the individual defendants were acting within the scope of their employment as Chicago officials. Taken in context, the Court construes those denials as denials that the alleged actions were taken at all. Elsewhere in their answers the individual defendants contend that they were agents of the City of Chicago (*see* Fourth Affirmative Defense to Count Five of the Complaint, Amended Answer of Byrne and Donovan; Sixth Affirmative Defense to Count Five of the Complaint, Answer of Winkler) and each of the defendants admitted the allegations of paragraph 31 of the first count, which alleges that at all times relevant "the Defendants were acting under color of state law and under color of the ordinances, policies, administrative orders, and customs of the Defendant City of Chicago."

The Court finds no genuine issue of fact concerning the question of whether the alleged activities of the individual defendants, if proven, were taken while acting within the scope of their employment. Plaintiffs have alleged misconduct on the part of the individual defendants only in their capacities as City of Chicago officials and superiors of Mr. Crot in his position within the Bureau of Equipment services. The individual defendants clearly contend that any actions they took were taken within the scope of their employment. Thus, the plaintiffs' second contention is without merit.[1]

Third, plaintiffs contend that the notice period was tolled because the defendants fraudulently concealed their conduct. Again, this argument is totally without merit.

Count IV of the complaint alleges infliction of emotional distress. Clearly, to be distressed by the defendants' conduct, Mr. Crot would have to have been aware of it. Thus, Mr. Crot's cause of action accrued, at the latest, at the time of his termination.

In Count V, Mrs. Crot seeks damages for loss of consortium, contending that Mr. Crot's stroke and its attendant complications were a result of the defendants' conduct. As noted above in Section I, Mr. Crot filed an Adjustment of Claim before the Illinois Industrial Commission on April 27, 1982. Thus, Mrs. Crot clearly was aware as of that date that Mr. Crot attributed his injuries, which are the basis for Mrs. Crot's loss of consortium claim, to Mr. Crot's employment difficulties.

Count VI of the complaint alleges that the individual defendants tortiously interfered with Mr. Crot's employment relationship with the City. As detailed in the next section, Mr. Crot has testified that, on the day of his termination, defendant Donovan told Mr. Crot that he was sorry that Mr. Crot had been fired, but that Mr. Donovan had a boss too, which Mr. Crot took to be a reference to Mayor Byrne. Mr. Crot further alleges that Donovan told him that Crot was on one side of the fence and that Donovan was on the other. *See,* Crot deposition pp. 55–59. Thus, given Mr. Crot's own testimony, it is clear that he had knowledge of facts supporting his claim in Count V on the day of his termination.

Thus, with regard to each state law count, it is clear that the plaintiffs knew of

---

1. As the court noted in *Franceshini v. Bettilyon,* 587 F.Supp. 906, 909 n. 4 (N.D. Ill. 1984), in which the plaintiff advanced a similar argument, this argument undercuts the plaintiffs Section 1983 claim, for if the individual defendants were acting outside the scope of their employment, the state action requirement of Section 1983 could well be in jeopardy. Plaintiffs cannot have it both ways: either the individual defendants acted on behalf of the City of Chicago or they did not.

facts supporting their causes of action more than one year prior to the date upon which they began this action. Therefore, the plaintiffs' allegations of fraudulent concealment are meritless.

Finally, Mr. Crot argues that his stroke incapacitated him and should toll the notice period. Without in any way commenting on the seriousness of Mr. Crot's stroke, the undisputed record reveals that Mr. Crot was able to file his action before the Industrial Commission on April 27, 1982, and testify before the Arbitrator on June 25, 1982. Each of these events occurred well before one year prior to the filing of this suit. Thus, it is simply not credible for Mr. Crot to argue that he was physically or mentally unable to file the statutory notice required by paragraph 8–102 prior to October 14, 1982.

■ Based upon the foregoing analysis, the Court concludes that statutory notice was required to be made in order for the plaintiffs to proceed with their state law claims, that such notice was not given, and that no genuine issue of fact exists concerning the invalidity of the defenses raised by the plaintiffs to toll the notice period until October 14, 1982, one year prior to the institution of this action. Therefore, the Court grants the defendants' motion for summary judgment upon Counts III, IV and V of the complaint.

### III

■ With the grant of summary judgment on the state law claims, only Count I of the complaint, Mr. Crot's Section 1983 claim, remains to be adjudicated. In support of Count I, Mr. Crot alleges that his termination was a result of his political activities and was therefore in violation of his rights under the First Amendment. Cf., Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Under the analysis adopted by the Seventh Circuit in Nekolny v. Painter, 653 F.2d 1164, 67–68 (7th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982), the plaintiff in actions alleging political firings must establish, by a preponderance of the evidence, that his political activities were a substantial or motivating factor which led to his termination. If the plaintiff does so, the burden shifts to the defendant to prove that the termination would have occurred even in the absence of the protected political activity. See also, Perry v. Larson, 794 F.2d 279, 283 (7th Cir.1986).

Each of the defendants have moved for summary judgment on Count I. This section of the opinion will discuss the arguments advanced by each of the individual defendants concerning the existence of a material issue of fact concerning the motivations behind Crot's termination. Successive sections of the opinion will deal with the City of Chicago's motion for summary judgment upon Crot's Monell claim, the application of the doctrine of laches to this action, and the application of the doctrine of collateral estoppel to this action.

The individual defendants' motion for summary judgment may be granted only if the only reasonable inferences that may be drawn from the record are that the individual defendants were uninvolved in the decision to terminate Mr. Crot or that Mr. Crot would have been terminated even in the absence of his political activities. Cf., Hermes v. Hein, 742 F.2d 350, 353 (7th Cir.1984). If there is evidence to support the conclusion that the defendants were involved in the decision to terminate Crot, and if the evidence concerning their motivations "is subject to conflicting interpretations, summary judgment is not appropriate regardless of the defendants' denials of political motivation." Id. at 354.

■ Applying these standards to this action, the Court finds material issues of fact exist as to the individual defendants' connection with Mr. Crot's termination and the motivation behind that termination. Although the parties have extensively briefed these issues and offered voluminous exhibits, the Court will comment upon only that evidence that it relies upon in reaching these conclusions.

As noted in the previous section of this opinion, Mr. Crot testified at his deposition

that on the day of his termination he visited Mr. Donovan at Mr. Donovan's office. According to Crot, Donovan told Crot the following:

> He just said, you know, he said, I have a boss the same as you do, and that's what I got, meaning the Mayor, or who is his only boss—you know he has one boss, and that's the Mayor. And he said, Billy said, I don't know what to say. You know, he says, it's tough. He says, I know.

Crot deposition at 57. According to Crot, Donovan also said during the same conversation, "look, you're on one side of the fence. I'm on the other side of the fence." Crot deposition at 59.

Mr. Crot's sister, Marilyn Van Bramer, was also an employee within the Streets and Sanitation Department. At her deposition, she testified as follows:

> Just when I went in after my brother had the stroke, which was two days after he had the stroke, I went in to see Commissioner Donovan and at that time, I asked him, you know, I went in to try and get help for my brother as far as getting back on for his insurance purposes, and he indicated he had nothing to do with it, that he was sorry, that he said he knew—he liked my brother, he liked both of us, that he took orders, too. He said your brother was on the wrong side of the political fence, there was nothing I could do.

Van Bramer deposition at 14.

The defendants have attacked the Crot and Van Bramer testimony on several levels. First, Donovan denies making the statements and denies discussing the termination with former Mayor Byrne at any time. Second, former Mayor Byrne denies that she ever heard of Mr. Crot until Commissioner Donovan mentioned Crot's stroke to her—an event which occurred after Crot's termination. Third, the defendants note that neither Crot nor Van Bramer noted the comments allegedly made by Donovan at the hearing concerning Crot's Workers' Compensation claim. This fact, defendants suggest, leads one to infer that the alleged conversations have been manufactured by Crot and Van Bramer.

All of the defendants' challenges to the deposition testimony are challenges to the credibility of Crot and Van Bramer. It is not proper for the Court to determine issues of credibility on summary judgment. *Cf., McGraw-Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir. 1986) (The responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits). Credibility issues should be resolved by the trier of fact at trial. *See, Perry v. Larson,* 794 F.2d at 283; *Nekolny v. Painter,* 653 F.2d at 1169 n. 2.

The Court also notes that the Crot and Van Bramer testimony relates admissions by Donovan which are very similar to admissions allegedly made by an agent for defendant Painter in *Nekolny v. Painter,* 653 F.2d at 1168. The Seventh Circuit found those admissions, if believed by the jury, were sufficient to support the verdict.

In light of the analysis above, the Court finds that the deposition testimony of Crot and Van Bramer concerning their conversations with Donovan raises a reasonable inference that both Donovan and Byrne were involved in the decision to terminate Crot and that the decision was substantially motivated by Crot's political activities.

With regard to defendant Winkler, Crot has cited sufficient evidence to raise an inference that Winkler was involved in the decision to terminate Mr. Crot. Mr. Winkler's deposition testimony indicates that, in early 1981, he was assigned by Commissioner Donovan to the Bureau of Equipment Services. From March through June or July of that year Mr. Winkler kept notes concerning alleged infractions by Mr. Crot of City policies regarding consumption of alcohol and excessive tardiness. *See,* Winkler deposition at 59. Winkler further testified that he informed Commissioner Donovan of the alleged infractions, and the two concurred that OMI should investigate. *See,* Winkler deposition at 57–58. Mr.

Winkler turned over his notes concerning Crot to the OMI investigators and those notes became a substantial basis for the OMI report. *See,* Winkler deposition at 60, Sullivan deposition at 65. The OMI report, in turn, is cited by the defendants as the basis for Crot's termination.

From the foregoing, it is clear that Winkler does not dispute that he was substantially involved in the process that led to Mr. Crot's termination. Moreover, it is not in dispute that Winkler conferred with Donovan concerning Crot's alleged infractions of the City's personnel regulations and what course of action should be taken in response to those alleged infractions. Therefore, a reasonable inference may be made that Winkler was involved in the decision to terminate Crot. Given the Court's previous finding that evidence exists that permits an inference that Mr. Crot's termination was substantially motivated by his political activities, summary judgment with regard to Winkler is not merited.[2]

### IV

The City of Chicago also has moved for summary judgment on Crot's *Monell* claim. In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipal liability under Section 1983 exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury" for which the plaintiff seeks relief. *Id.* at 694, 98 S.Ct. at 2037.

The Supreme Court recently addressed the question of "whether, and in what circumstances, a decision by municipal policymakers on a single occasion" may satisfy the *Monell* requirement. *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct.

1292, 1294, 89 L.Ed.2d 452 (1986). The Court noted:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. [citation omitted] The official must also be responsible for establishing final government policy representing such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

*Id.,* 106 S.Ct. at 1299–1300 (footnotes omitted).

In the previous section of this opinion, the Court concluded that the deposition testimony of Crot and Van Bramer raised a reasonable inference that former Mayor Byrne was involved in the decision to terminate Crot and that the termination decision was substantially motivated by Crot's political activities. Although the City admitted in its amended answer to the complaint that Mayor Byrne, at all times relevant, was a policymaker of the City, *see,* Amended Answer at ¶ 3, the City contends that, under *Pembaur,* Mayor Byrne was not a policymaker with authority to establish final City policy with respect to the termination of City employees.

■ The City argues that only the Commissioner of the Department of Personnel for the City of Chicago has final authority to establish City policy with respect to the

---

**2.** The defendants have moved to strike portions of the plaintiffs' statement of genuine issues, filed in opposition to the defendants' motions for summary judgment. The motion to strike is based upon the defendants' assertion that the plaintiffs' statement of genuine issues is replete with misrepresentations and mischaracteriza- tions of the record developed through discovery. Having examined both the plaintiffs' statement and the record evidence, the Court does not agree with that assessment. Therefore, the defendants' motion to strike portions of the plaintiffs' statement of genuine issues is denied.

termination of City employees. The Court notes that, under the Municipal Code of the City of Chicago, the Commissioner of Personnel is appointed by the Mayor and serves at the pleasure of the Mayor. *Municipal Code*, § 25.1–2. Moreover, the Mayor is charged with the supervision of all City officers, including the Commissioner of Personnel. *Municipal Code*, § 3–2. Thus, although the Mayor does not have the duty of overseeing the day-to-day operation of the Department of Personnel, the Mayor has both the duty and authority to supervise the City's personnel practices, and actions taken by the Mayor on personnel matters clearly qualify as actions taken by a municipal policymaker as that term has been interpreted in *Pembaur.*

 Given this analysis, a genuine issue of fact exists as to whether a municipal policymaker, whose actions may legitimately be considered an act of the municipality itself, was involved in a decision to terminate the plaintiff because of the plaintiff's constitutionally protected political activities. Therefore, the City of Chicago's motion for summary judgment is denied.[3]

### V

Each of the defendants moved for summary judgment on the ground of laches. However, defendants Chicago, Byrne and Donovan withdrew their argument premised upon laches in their reply brief. Therefore, this section of the opinion deals solely with the applicability of laches to defendant Winkler.

Count I of plaintiffs' complaint prays for both damages and equitable relief in the form of reinstatement as Assistant Superintendent of the Bureau of Equipment Services. Although plaintiffs' response brief argues that the plaintiffs seek only damages, the Court has not found any record of withdrawal of the prayer for equitable relief. Thus, the Court finds that the complaint presents claims for both equitable and legal relief.

In *Baker v. F & F Investment,* 420 F.2d 1191, 1193 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970), the Seventh Circuit rejected the argument that laches should govern such "mixed" complaints. Instead, the court found the relevant statute of limitations should govern and, based upon the facts of that case, upheld the dismissal of a 42 U.S.C. § 1982 claim as time barred. In the instant case, there is no dispute concerning the timeliness of the action under the applicable statute of limitations. Therefore, *Baker* suggests that Winkler's laches argument must be rejected.

However, in *Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351, 357–59 (7th Cir.1983), the Seventh Circuit strongly suggested that it would reconsider the application of *Baker* to "mixed" actions in which the statute of limitations had yet to run and laches is claimed as a defense to the grant of equitable relief.

The *Cannon* court noted with approval the analysis of the Fifth Circuit in *Nilsen v. City of Moss Point,* 674 F.2d 379, 387–88

**3.** Plaintiffs' counsel, William F. Fitzpatrick, filed an affidavit in support of plaintiffs' memorandum in opposition to the motion for summary judgment. The defendants have moved to strike portions of the affidavit, which is almost exclusively devoted to a defense of the plaintiffs' *Monell* claim. The Court agrees with defendants that paragraphs 2, 3 and 5 of the affidavit do not present admissible evidence. Paragraph 2 seeks to incorporate attached newspaper clippings, which clearly constitute inadmissible hearsay. Paragraph 3 states that Mr. Fitzgerald intends to call certain individuals identified within the paragraph at trial and *believes* that those individuals would testify that they were fired from their City jobs by the Byrne adminis-

tration because of their political support of Richard Daley or Thomas Hynes. The paragraph clearly does not comport with the instruction within Fed.R.Civ.P. 56(e) that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Similarly, paragraph 5 states that "most if not all" of a group of individuals named in paragraph 4 of the affidavit have filed lawsuits alleging a political firing by the Byrne administration. This paragraph is also deficient under Rule 56(e). Therefore, the Court grants the defendants' motion to strike those portions of Mr. Fitzgerald's affidavit.

(5th Cir.1982), *reheard en banc*, 701 F.2d 556 (5th Cir.1983). The *Nilsen* court, after thoroughly reviewing the relevant case law, concluded that in mixed Section 1983 cases legal claims may be barred only through application of the statute of limitations, but equitable claims may also be barred through the application of laches. Given the Seventh Circuit's comments in *Cannon*, this Court will apply the *Nilsen* holding in this action.

■ As noted above, only defendant Winkler continues to press the argument that this action is barred by laches. However, the sole claim for equitable relief found in plaintiffs' complaint is for reinstatement. That claim can only be directed to the City or individuals within City government capable of implementing that relief. Winkler does not fit within the latter group. Therefore, his arguments concerning laches are unavailing.

### VI

As noted above, on or about November 11, 1981, about a month after his firing, Mr. Crot suffered a stroke. On April 27, 1982, he filed an Application for Adjustment of Claim before the Illinois Industrial Commission, claiming that the stroke resulted from work-related stress. The application sought the payment of workers' compensation benefits from the City of Chicago.

During the summer and fall of 1982, a hearing concerning Mr. Crot's application was held, pursuant to Ill.Ann.Stat. Ch. 48, ¶ 138.19(b), before Arbitrator Zenia S. Goodman. At least seven witnesses, including Mr. Crot and two medical doctors, testified before the Arbitrator. The transcript of the hearings amounts to at least 280 pages.

On January 24, 1983, the Arbitrator rendered her decision denying Mr. Crot benefits under the Workmens' Compensation Act. The decision states, in relevant part:

> The Arbitrator renders findings on the following disputed issues:

> Relating to whether an accident occurred which arose out of and in the course of Petitioner's employment by Respondent; whether Petitioner's present condition of ill-being is causally related to the injury; nature and extent of the injury, the Arbitrator finds:

> Petitioner sustained a massive cerebral vascular accident on November 10, 1981. It was alleged by Petitioner that some symptoms of the impending CVA (stroke) occurred on October 16, 1981. On said date Petitioner was discharged. It is Petitioner's contention that the stress of his discharge was a causative factor in the stroke he later sustained. Medical evidence relating to the effect of emotional stress was contradictory. However, angiograms of Petitioner's carotid arteries revealed extensive occlusion. Medical testimony on cross-examination was basically in argument that Petitioner could have sustained a stroke with or without any physical or emotional stress.

> . . . . .

> The Arbitrator finds:

> That Petitioner failed to sustain his burden of proof that his present condition of ill-being is related to his employment. Claim for compensation, therefore, is hereby denied.

*See,* Exhibit Q, defendants' brief in support of motion for summary judgment.

Mr. Crot appealed the decision of Arbitrator Goodman to the Illinois Industrial Commission pursuant to Ill.Ann.Stat. ch. 48, ¶ 138.19(e). On May 5, 1986, the Commission rendered the following decision and opinion:

> Petitioner appeals the Decisions of Arbitrator Goodman finding that Petitioner failed to prove he sustained accidental injuries arising out of and in the course of his employment on October 16, 1981. The threshold issue on Review is whether Petitioner sustained such injuries. The Commission, after considering the entire record, affirms the Decision of the Arbitrator for the reasons set forth below.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW

The Commission finds:

1. The Arbitrator saw the Petitioner, heard all the testimony, considered all the evidence, and made findings (attached) which are supported by evidence in the record and which the Commission hereby adopts.

Based on the above the Commission finds it has no reason to change the Arbitrator's Decision.

IT IS THEREFORE ORDERED BY THE COMMISSION that the Decision of the Arbitrator dated January 24, 1983 is hereby affirmed.

*See,* Exhibit B, motion to reconsider trial date. The decision of the Commission constituted the final administrative action concerning Mr. Crot's claim. The defendants contend that the decision of the Illinois Industrial Commission collaterally estops Mr. Crot from claiming that his stroke was caused by his termination.

The Supreme Court recently addressed the application of administrative *res judicata* in Section 1983 actions. The Court held

that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [citation to *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)], federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*University of Tennessee v. Elliott,* — U.S. —, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986).

■ Under the *Elliott* standard, this Court must first determine whether the Illinois Industrial Commission acted in a judicial capacity when it denied Mr. Crot's

Workers' Compensation claim. According to the *Restatement (Second) of Judgments* § 83, p. 266 (1982), an administrative agency acts in a judicial capacity, and its determinations are entitled to preclusive effect, when its procedures entail the essential elements of an adjudication. Those elements include adequate notice, the right of parties to present evidence on their own behalf and rebut evidence presented by the opposition, a formulation of issues of law and fact, a final decision, and the procedural elements necessary to conclusively determine the issue in question. *Id., see also, Buckhalter v. Pepsi-Cola General Bottlers, Inc.,* 768 F.2d 842, 850 (7th Cir.1985), *cert. granted, vacated on other grounds and remanded,* — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 735 (1986).

■ The rules and procedures utilized by the Illinois Industrial Commission to resolve workers' compensation claims clearly entail the essential elements of an adjudication. Pursuant to the *Rules Governing Practice Before the Industrial Commission Under the Workers' Compensation and Occupational Diseases Act,* effective December 20, 1985 ("Rules"),[4] all parties receive notice of the hearing and an opportunity to present evidence on their own behalf and rebut evidence presented by the opposition. In fact, the hearings are virtually indistinguishable from judicial trials. Only attorneys licensed to practice in Illinois may appear on behalf of parties (Rules § 7020.40), parties may issue subpoenas to compel the attendance of witnesses and the production of documents at the hearings (Rules § 7030.50), and the Illinois Rules of Evidence apply in all proceedings (Rules § 7030.70). Evidence depositions may be taken pursuant to stipulation of the parties or order of the Arbitrator (Rules § 7030.-60).[5] Attorneys are also entitled to make

---

**4.** Neither of the parties provided the Court with a copy of the Rules. However, the Court has obtained a copy of the Rules through its own research and has taken judicial notice of their content.

**5.** As the Rules of the Commission clearly indicate, the title "Arbitrator" is misleading. Arbitrators, as that title is used within the Commission, function as Administrative Law Judges.

opening and closing statements (Rules § 7030.90)[6]

Arbitrators decisions are also required to clearly state the legal and factual issues presented for resolution by the parties and state findings of fact and conclusions of law with regard to each issue presented. (Rules § 7030.80).

If the Arbitrator's decision is appealed, the Commission may, under certain circumstances, allow additional evidence to be introduced. *See*, Ill.Ann.Stat. ch. 48, ¶ 138.-19(e), Rules, § 7040.40. The Commission reviews the record of the action before the Arbitrator, including a transcript of the hearing or an agreed statement of facts. The parties may also file briefs concerning the exceptions noted by the appellant to the Arbitrator's decision. *Rules,* § 7040.70. The decision of the Commission completes all administrative action and is conclusive absent a timely suit for judicial review before the appropriate Illinois Circuit Court. Ill.Ann.Stat. Ch. 48, § 138.19(f). The decision of the Circuit Court may be appealed to the Illinois Supreme Court. *Id.*

■ These procedures clearly constitute an administrative adjudication. However, before administrative res judicata will bar relitigation of a claim in federal court, the parties must have had a full and fair opportunity to litigate their case before the administrative tribunal. Given the procedural and evidentiary safeguards afforded claimants before the Industrial Commission, this Court has no doubt that the procedure utilized allows claimants a full and fair hearing. *Cf., Buckhalter*, 768 F.2d at 852 (reaching a similar conclusion with regard to proceedings before the Illinois Human Rights Commission).

Mr. Crot notes, however, that his physical condition at the time of his testimony before the Arbitrator made it difficult for him to complete his direct examination. Therefore, at the suggestion of the Arbitrator, the parties stipulated to what the testimony of Mr. Crot would have been had the direct examination proceeded along conventional lines.

■ The Court notes that the Arbitrator's suggestion was designed, and served, only to reduce the strain which testifying placed upon Mr. Crot. There is no indication from the record that Mr. Crot was prevented from or was otherwise unable to enter into the record any evidence which he wished the Arbitrator to consider. *See,* Exhibit P, defendant's brief in support of summary judgment. Therefore, the Court concludes that Mr. Crot received a full and fair opportunity to litigate his claim before the Commission.

The Court must next determine whether the Illinois courts would give preclusive effect to the Industrial Commission's determination. The Illinois Supreme Court has granted preclusive effect to an unappealed decision of the Industrial Commission. *Hughey v. Industrial Commission,* 76 Ill.2d 577, 31 Ill.Dec. 787, 394 N.E.2d 1164 (1979). However, according to the defendants in this action, Mr. Crot has appealed the decision of the Industrial Commission to the Cook County Circuit Court. Thus, *Hughey* is not dispositive concerning the preclusive effect accorded by the Illinois courts to a decision of the Industrial Commission which is on appeal.

■ Although this Court has not found any cases directly on point, Illinois case law suggests that Illinois courts would accord preclusive effect to an Industrial Commission determination which is on appeal. First, "in Illinois, the *res judicata* effect affixes to the administrative determination rather than to that of the reviewing court." *Godare v. Sterling Steel Casting Co.,* 103 Ill.App.3d 46, 58 Ill.Dec. 588, 601, 430 N.E.2d 620, 623 (5th Dist.1981). Second, under Illinois law, the appeal of a judicial judgment does not suspend the preclusive effect of that judgment. *See, Wiseman v.*

---

**6.** The Rules pertaining to Arbitration hearings at the time of Mr. Crot's hearing in 1982 were not materially different from those noted above. *See, Rules Governing Practice Before the Indus-*

*trial Commission Under the Workers' Compensation and Occupational Disease Acts,* effective July 1, 1982.

*Law Research Service, Inc.*, 133 Ill.App.2d 790, 270 N.E.2d 77, 79–80 (4th Dist.1971), *Sixty-third & Halsted Realty Co. v. Goldblatt Bros., Inc.*, 342 Ill.App. 389, 96 N.E.2d 838, 843 (1st Dist.1951). Logic dictates that final adjudications of administrative agencies be treated similarly.

Having determined that the Illinois courts would accord preclusive effect to the decision of the Industrial Commission, the Court must determine whether according the decision preclusive effect in this action is appropriate.

For a party to invoke the doctrine of collateral estoppel, four conditions must be established: 1) a final determination on the merits has been reached in a case, 2) the issues for which estoppel is sought were essential to that decision, 3) the party against whom estoppel is invoked had a full opportunity to address the issues in that case, and 4) the issues are identical to the issues in the case in which estoppel is sought.

*Ray v. Indiana & Michigan Electric Co.*, 758 F.2d 1148, 1150 (7th Cir.1985).

■ The Court finds each of these elements is met in the instant case. First, the May 5, 1986 decision of the Industrial Commission represents the final decision of the Industrial Commission. Second, the issue upon which estoppel is sought—whether Mr. Crot's stroke was a result of stress caused by his termination by the City—was, unquestionably, essential to the Commission's decision. Third, as the Court noted above, Mr. Crot had a full and fair opportunity to litigate this issue before the Commission. Fourth, the issue is identical to one of the issues posed by this action.

Mr. Crot claims that "as a direct and proximate result of the defendants conduct (*i.e.*, the allegedly unconstitutional discharge of Mr. Crot) the Plaintiff suffered a stroke on November 11, 1981 ..." *See*, Complaint at ¶ 33. Arbitrator Goodman noted the same claim in her opinion: "It is Petitioner's contention that the stress of his discharge was a causative factor in the stroke he later sustained." After reviewing the evidence, the Arbitrator found that "Petitioner failed to sustain his burden of proof that his present condition of ill-being is related to his employment." That finding was adopted by the Commission and represents a final administrative adjudication.

Therefore, the Court finds that application of administrative res judicata would be appropriate in this case to collaterally estop Mr. Crot from relitigating the issue of whether the defendants' actions were causally related to Mr. Crot's stroke.[7] The Court hesitates to do so, however, because of the possibility that the administrative adjudication that is the source of a collateral estoppel in this action may be reversed upon judicial review. Therefore, the Court finds that the wisest course of action is to stay trial of this action until the Circuit Court action and, should one follow, any appeal to the Illinois Supreme Court, are concluded. *Cf. Wiseman*, 270 N.E.2d at 80, *see generally*, 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 4433 (1981). If the Illinois courts affirm the decision of the Industrial Commission, Mr. Crot will be collaterally estopped from claiming in this Court that the stroke he suffered in November, 1981, was causally related to his termination as an employee of the City of Chicago.[8]

---

**7.** Mr. Crot also contends that application of collateral estoppel will deprive him of his right to trial by jury. This claim is clearly meritless. *See, Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 333–37, 99 S.Ct. 645, 652–55, 58 L.Ed.2d 552 (1979).

**8.** The Court recognizes that should the Illinois courts affirm the decision of the Industrial Commission, the basis for application of res judicata will rest upon 28 U.S.C. § 1738, which "requires federal courts to give the same preclusive effect to state court judgments that those

judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). There is no doubt that the Illinois courts would accord preclusive effect to a determination of the Industrial Commission which has been affirmed upon judicial review. *Cf., Hughey v. Industrial Commission*, 76 Ill.2d 577, 31 Ill.Dec. 787, 394 N.E.2d 1164 (1979). Therefore, pursuant to Section 1738, this Court would be obligated to do so as well. *Cf., Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d

## CONCLUSION

Defendants' motions for summary judgment are granted in part and denied in part. Counts III, IV and V of the complaint are dismissed. The defendants' motion to strike portions of the plaintiffs' statement of genuine issues is denied. The defendants' motion to strike portions of the affidavit of William F. Fitzpatrick is granted. The defendants' motion to reconsider the trial date is granted. The trial date of October 15, 1986, is stricken and trial of this action is stayed pending final judicial action on Mr. Crot's appeal of the denial of his workers' compensation claim. The pretrial order submission date of October 1, 1986, is stricken and the pretrial order in this cause will be due 30 days after final resolution of Mr. Crot's workers' compensation appeal. The status hearing set for October 1, 1986 is stricken.

308 (1980) (applying collateral estoppel, pursuant to Section 1738, in a Section 1983 action), *Kremer,* 456 U.S. at 480 n. 21, 102 S.Ct. at 1910 n. 21 (noting that judicial affirmance of an administrative determination is entitled to preclusive effect). Thus, although the collateral estoppel would be a result of judicial res judicata rather than administrative res judicata, the result in the present action would be identical.