**Michael G. PERRY, Plaintiff-Appellee,**

v.

**Joseph M. LARSON,
Defendant-Appellant.**

No. 85–1298.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1985.
Decided June 23, 1986.

James A. Hanely, Milwaukee, Wis., for defendant-appellant.

William C. Griesbach, Liebmann, Conway, Olejniczak & Jerry, Green Bay, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and WOOD and CUDAHY, Circuit Judges.

CUMMINGS, Chief Judge.

Michael Perry brought a 42 U.S.C. § 1983 action against Sheriff Joseph Larson alleging that Larson suspended and later discharged Perry because he ran against him in the race for Sheriff of Marinette County, Wisconsin. A jury found for Perry and awarded him $76,466 compensatory and $5000 punitive damages. The defendant's motion for a new trial was denied. On appeal defendant raises several issues. First, he argues that there was insufficient evidence to find for the plaintiff on his claim, while there was ample evidence to support Larson's defense of good faith. Second, Larson argues that a combination of improper evidentiary rulings and the jury form deprived him of a fair trial. Third, the evidence was supposedly insufficient to support an award for punitive damages. Finally, he asserts that plaintiff's damages should be reduced by interim (a) unemployment compensation payments and (b) earnings. We affirm.

I

Mike Perry was a deputy in the Marinette County Sheriff's Department from 1974 until his discharge in 1982. Defendant Larson has been sheriff since 1978. In February of 1982 Perry declared his candidacy for sheriff. Prior to 1982 his personnel record contained commendations for good police work and none contra. In May 1982 Perry was suspended for 5 days for failure to return a proof of service card. He was given no hearing or other opportunity to explain that he had left the card to be picked up by another deputy while he was out of town—a routine practice within the department. On July 6, 1982, Perry received a letter warning him of the consequences of taking extended lunch breaks.

The events of July 29, 1982, form the basis of Perry's discharge. On that evening Tim Powers, Marshal of the town of Coleman, arranged a meeting with Perry at 11:15 p.m. At 11:22 p.m. the sheriff's dispatcher called Perry and two other deputies, Sergeant Richard Lepkowski and Deputy Earl Wagner to inform them of noises at "Jack's Standard," a gas station in Middle Inlet. Perry immediately acknowledged the dispatch. The dispute in this case related to how long Perry remained with Powers before responding to the dispatch.

Perry claims he continued the conversation with Powers for "a few minutes" and then headed toward Middle Inlet, 17 miles to the north. He did not consider the report to be serious for he knew that Jack often worked late at his station. When he reached Crivitz, a town a few miles to the south of Middle Inlet, he heard Wagner radio to say he had arrived and everything was secure. He then turned off to continue his patrol. All of this is normal procedure because Marinette County is a large rural area and the deputies are encouraged to exercise their judgment about how quickly they respond to non-emergency calls. At the request of Lepkowski and Larson, Perry filed a report to this effect. According to Larson's version, Perry totally failed to respond to the dispatcher's call. He claims that Powers and Perry did not part company until close to midnight. Thus he had ample reason to fire Perry: failure to respond to a dispatch and filing a false report.

On July 30, 1982, there was a meeting with Larson, Corporation Counsel James

Murphy, Lepkowski, a union official and Perry regarding the incident. On August 20, 1982, Perry received a call from Everett Krull, a county supervisor sitting on the County Law Enforcement Committee. Krull told Perry that if he dropped out of the sheriff's race, both the 5-day failure to return a proof of service suspension (which Perry was contesting) and the Jack's Standard incident would be dropped. He also told Perry that the deal had been cleared with Murphy.

Shortly after the Jack's Standard incident Lepkowski spoke with Powers who later wrote a report stating that Perry remained with him for about 15 minutes before leaving to respond to the call. Lepkowski then contacted Powers again and told him to alter the report because it contained "opinion." Powers changed the report, withdrew some comments about the seriousness of the dispatch and also changed the time from "about 15 minutes" to exactly "11:58 p.m." (or 36 minutes).

On September 14, 1982, Larson defeated Perry in the sheriff's election. On September 27 Larson discharged Perry for failure to respond to the Jack's Standard dispatch and filing a false report, violations of the Union Agreement and Civil Service Ordinance No. 36.

## II

■ A. The defendant asks this Court to overturn the jury's determination. His burden is heavy; a jury verdict will be set aside only if the "evidence [viewed] in the light most favorable to the plaintiff and [the] facts and inferences ... lead to but one conclusion—that there is a total failure of evidence to prove the plaintiff's case." *Independence Tube Corp. v. Copperweld Corp.*, 691 F.2d 310 (7th Cir.1982), reversed on other grounds, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628. In this case there is ample evidence for the jury to have concluded that Perry's political activities were a substantial factor in the decision to terminate him. See *Mt. Healthy City School Dist. Board of Education v. Doyle*, 429

U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471.

For example, there was corroborated testimony that Larson had made a threatening remark about Perry's continued employment shortly after he announced his candidacy. Next was the 5-day suspension without a hearing and then a letter chastising Perry for taking an over-long lunch—one minute late! Finally, there was the offer made by Krull that if Perry dropped out of the sheriff's race, both the suspension and the Jack's Standard discharge would be dropped. Some of this evidence was denied or contradicted, but it was for the jury to decide whom to believe and they decided to believe Perry. See *Seifert v. Solem*, 387 F.2d 925, 928 (7th Cir.1967).

■ B. Larson next contends that there were non-political reasons justifying Perry's discharge. Once the plaintiff has demonstrated that political activities were a substantial factor in a termination decision, the burden shifts to the defendant to show that the plaintiff would have been discharged even in the absence of the protected activity. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. Larson notes that both the failure to respond and filing of the false report were sufficient bases for discharge, so that he has met his burden. But first the jury had to believe that Perry did fail to respond to the dispatch and then lied about it; that was the central dispute. Even if the jury disbelieved Perry on that point, there was evidence to show that the discipline given to Perry was unusually harsh when compared with equally egregious behavior of other deputies within the Sheriff's department. Particularly damning was the testimony of the threatening statement made by Larson shortly after Perry announced his decision to run for sheriff. To top it off, a deal was offered to Perry by those closely affiliated with the Sheriff to quit the campaign in exchange for the dropping of both the suspension and discharge incidents. The jury was certainly entitled to believe this testimony and find that the discharge would not have occurred but for the protected political activity.

■ C. Finally, Larson argues that he acted in good faith when discharging Perry because he consulted with counsel before acting and because others had initiated the complaints against Perry. Even if it could be logically concluded that Larson discharged Perry for political reasons and without non-political justification (see *supra* parts IIA and B) and yet acted in good faith,[1] there was plenty of evidence for the jury to conclude otherwise. In addition to the testimony discussed *supra* in parts A and B, the jury heard testimony that it was unusual for the Sheriff to be personally involved in any disciplinary actions; those were usually handled by Captain Belonga. Yet Larson personally handled each of Perry's disciplinary actions. Additionally, the two individuals initiating discipline against Perry were (1) Larson's personal secretary, Deputy Blair, and (2) Sergeant Lepkowski, who had a motive to see Perry off the force (see *infra* part IIIA). All told, the jury had ample evidence from which to conclude that Larson knew he was violating Perry's constitutional rights when he discharged him.

## III

The defendant further argues that two evidentiary rulings regarding the admissibility of arbitration proceedings and an improper jury form combined to deny him a fair trial.

■ A. The first evidentiary point of error the defendant raises is the motion *in limine* order excluding reference to an arbitration hearing pursuant to the collective bargaining agreement that upheld Perry's termination. The district court relied on *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302, in concluding that the hearing should not be admissible. That ruling was within the discretion of the trial court and may not be overturned absent abuse of discretion. *Id.* at 292 n. 13, 104 S.Ct. at 1804 n. 13; *Alex-*

ander v. Gardner-Denver Co., 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147. *McDonald* set out the factors to be examined before admitting such evidence: (1) whether the collective bargaining agreement incorporates the same standards as federal civil rights legislation; (2) the degree of procedural fairness accorded the employee; (3) whether an adequate record with respect to the issue of discriminatory treatment was developed; and (4) the special competence of the arbitrator. 466 U.S. at 292 n. 13, 104 S.Ct. 1804 n. 13. The district court correctly decided that the issue of political motivation was not sufficiently explored during the arbitration proceeding. As the court noted, the union representative refused to bring up Perry's retaliation defense. The only time the political campaign was mentioned was with respect to the reason for the delay between the incident and the discharge. Under *McDonald* the proceeding was not credible evidence on the motivation issue.

■ Larson also complains of the district court's ruling that allowed testimony of a previous unrelated arbitration. The testimony involved a hearing conducted prior to Perry's discharge over whether or not Perry should have been promoted to sergeant instead of Lepkowski. It was offered by plaintiff to show why Lepkowski would be involved in the attempt to fire Perry, since Lepkowski would lose his rank if Perry were promoted. The defendant seems to object only on the basis that because his arbitration proceeding evidence was not admissible, then neither should Perry's promotion hearing evidence. That argument is very weak. First, the evidence is relevant in that it shows an increased likelihood of Lepkowski working with Larson to find a somewhat plausible ground to terminate Perry. Second, unlike Larson's hear-

---

1. Larson's good faith argument rests on qualified good faith immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396. Larson does not argue that he was not aware of Perry's constitutional rights.

Consequently it would be illogical to extend good faith immunity to a government official who has intentionally violated an individual's constitutional rights. See *McMillan v. Svetanoff,* 793 F.2d 149, at 155 (7th Cir.1986).

ing evidence, the promotion hearing evidence was not admitted to establish conclusively the propriety or impropriety of the dismissal, the question at issue, but only to demonstrate a possible motive. Neither evidentiary ruling was error.

B. The form that went to the jury incorrectly listed Marinette County as a defendant. Marinette County originally had been a defendant, but the parties stipulated prior to trial that the County would indemnify the Sheriff for any compensatory damages. There was no objection made to the form before it went to the jury, although copies of the form were presented to counsel for both sides prior to deliberation. The incorrect County inclusion was first noticed some time after the jury questioned the court as to who would pay the damages assessed against the defendant. The defendant argues that the jury's calculation of the damages was influenced by seeing Marinette County as a defendant.

■■■■ In order to receive a new trial, the defendant must show that the error was substantial enough to deny him a fair trial.[2] *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663; *United States v. Bruscino,* 687 F.2d 938, 940 (7th Cir.1982) *(en banc);* Federal Rule of Civil Procedure 61. Unfortunately for him, defendant failed to make a timely objection to the form of the verdict and thus has waived this error. *Central Progressive Bank v. Fireman's Fund Ins.,* 658 F.2d 377, 382 (5th Cir.1981). Admittedly, there was not a great deal of time to review the form, but neither is there abundant time to object during a line of questioning or to the admission of evidence in the heat of trial. Nevertheless, defense counsel had the opportunity to review the form before deliberation but failed to bring up the mistake.

■■■■ Notwithstanding the waiver, the error did not result in an unfair trial. The form was a special verdict form on which the jury answered specific questions. None of these questions mentioned Marinette County. Rather they referred to Sheriff Larson by name. The judge properly responded to the jury's question that he could not answer its question as to who would pay the judgment. None of the damages awarded were excessive and all appeared to be based on evidence as to lost wages, emotional suffering and the conduct of the defendant. Without some evidence that the jury form error influenced the jury's liability or damage award decision, such as polling or questioning of the jury (not done or requested here) or unreasonable, excessive damages, it is impossible to conclude that the defendant was substantially harmed by the County's inclusion.

## IV

■■■■ A. Larson asks this Court to reduce Perry's award of damages by the amount of unemployment compensation he received after the discharge, citing *Olshock v. Village of Skokie,* 411 F.Supp. 257 (N.D. Ill.), affirmed, 541 F.2d 1254 (7th Cir.1976). The defendant asserts that *Olshock* holds that as a matter of law § 1983 damage awards should be reduced to reflect unemployment compensation. In *Olshock* police officers initiated a § 1983 action against the Village of Skokie for termination in retaliation for the exercise of their First Amendment rights. The district judge found for the police officers on the liability issue and awarded them damages. But the court then reduced the damages by the amount of unemployment compensation received by the police officers and ordered the defendant Village of Skokie to reimburse the state for that amount. The propriety of the reductions was not discussed by the court of appeals. The appropriateness of such an order is questionable, since the state was not a party to the action. Notwithstanding that problem, such an or-

---

**2.** The defendant argues in his brief that the verdict form error combined with the improper evidentiary rulings (see *supra* IIIA) reached the level of denying him a fair trial. Given our disposition of the evidentiary claims, his right to a new trial must depend solely on this admitted error.

der violates the collateral source rule. The collateral source rule applies to § 1983 actions. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 231–232, 90 S.Ct. 1598, 1641, 26 L.Ed.2d 142; see also *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337. Unemployment compensation is a source of funds independent of the transaction giving rise to the claim and thus is collateral. See *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 941–942 (2d Cir.1984); accord *Collins v. Robinson*, 568 F.Supp. 1464, 1471 (E.D.Ark.1983) (unemployment compensation payments are clearly collateral; they may not be offset in favor of a tortfeasor), affirmed on other grounds, 734 F.2d 1321 (8th Cir.1984). The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated, but rather to prevent the tortfeasor from paying twice. *Thomas v. Shelton*, 740 F.2d 478, 484 (7th Cir.1984). Under the collateral source rule Larson cannot benefit simply because the state has provided a means of helping those who are out of work, justly or unjustly.[3]

■ Additionally, the defendant asks us to reduce the damage award by $3,000, which represents the amount of money earned by the plaintiff while unemployed. There was conflicting testimony whether the money would have been earned anyway because Perry testified that he did part-time carpentry work while he was a deputy. The defendant had the opportunity to argue the mitigation evidence to the jury and offer an instruction regarding mitigation of earnings—neither was done. The jury could have considered such evidence and believed Perry's testimony; if the arguments were not clear it is the fault of the defendant.

■ B. Finally, the Sheriff argues that the evidence did not support an award of punitive damages. A jury is permitted to assess punitive damages in a § 1983 action if the defendant's conduct involves reckless or callous indifference to the plaintiff's rights, or if the action is motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632; *Kolar v. County of Sangamon*, 756 F.2d 564, 569 (7th Cir.1985); *McFadden v. Sanchez*, 710 F.2d 907, 910 (2d Cir.1983), certiorari denied, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337. Reviewing the evidence most favorably to the plaintiff, there were sufficient facts for the jury to award punitive damages. The evidence shows that the Sheriff suspended Perry for 5 days without conducting any hearing, disciplined him for minor infractions, pressured a statement from Powers, threatened Perry's job, and offered to forget the charges—all with the intent to force Perry out of the sheriff's race or, if that failed, punish him for the effort. From all of this evidence, a jury could reasonably find that Larson acted with malicious intent.

For the reasons given above, the jury's verdict and the district court's rulings were proper. Judgment affirmed.

---

**3.** In analogous areas, such as Title VII and Age Discrimination in Employment Act (ADEA) actions, the courts are split as to whether unemployment compensation payments should be deducted from back pay awards. Compare *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793–795 (3d Cir.1985), certiorari denied, — U.S. —, 106 S.Ct. 796, 88 L.Ed.2d 773, and *Kauffman v. Sideral Corp.*, 695 F.2d 343, 346–347 (9th Cir. 1982), with *Satty v. Nashville Gas Co.*, 522 F.2d 850 (6th Cir.1975), affirmed in part and vacated in part, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356. Most circuits including our own hold that the decision whether to deduct is within the discretion of the district court. See *Orzel v.* *Wauwatosa Fire Dep't*, 697 F.2d 743, 756 (7th Cir.1983); *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 161–162 (7th Cir.1981).

In most of these cases the employer argues that because it contributed to the unemployment compensation fund (usually through taxation) the benefits are direct rather than collateral. Courts have rejected that argument. See *Gullett Gin*, 340 U.S. at 364–365, 71 S.Ct. at 340; *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir.1983). Here Larson cannot make that argument because he did not make any contributions to that fund. Therefore, the unemployment compensation payments were plainly collateral and not deductible.