EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff–Appellee,
Cross–Appellant,

v.

James E. O'GRADY, Sheriff of Cook
County; Philip T. Hardiman, Executive
Director of the Cook County Depart-
ment of Corrections; and Board of
Commissioners of Cook County, De-
fendants–Appellants, Cross–Appellees.

Nos. 87–1996, 87–2130.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1988.

Decided Sept. 12, 1988.

As Corrected Sept. 15, 1988.

Diane Kristen, Asst. State's Atty., Chicago, Ill., for defendants-appellants/cross-appellees.

Donna J. Brusoski, E.E.O.C., OGC Appellate Services, Washington, D.C., for plaintiff-appellee/cross-appellant.

Before BAUER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Twenty-six former correctional officers were forced to retire before the age of 70 by the Cook County Sheriff's Office in violation of the Age Discrimination in Employment Act ("ADEA" or "Act"), 29 U.S.C.

§§ 621 *et seq.* The district court ordered the defendants to pay back wages, liquidated damages and prejudgment interest to various claimants. The Equal Employment Opportunity Commission ("EEOC") and the defendants appeal from the district court's award of damages. We affirm in part and reverse and remand in part.

## I.

In April of 1975, the Cook County Sheriff's office instituted a mandatory retirement age of 63 for corrections officers working in the county jails.[1] Congress passed an amendment to the ADEA, effective January 1, 1979, prohibiting the forced retirement of non-federal employees between the ages of forty and seventy years old. Pursuant to the new legislation, on September 11, 1979, the EEOC issued a subpoena to the Sheriff seeking detailed information on the origin and nature of the mandatory retirement policy, the names of affected employees, and any defenses under the ADEA. The Sheriff refused to comply with the requests, arguing that the age 63 mandatory retirement policy was permissible for federal and therefore state and local officers; that it was necessary to ensure safety and security; that the ADEA could not constitutionally apply to local government; and that the scope of the information sought was too broad. The EEOC brought a subpoena enforcement action in federal court. In May of 1980, before the district court ruled on the enforcement action, defendants raised the mandatory retirement age for Cook County corrections officers to 65 years.[2]

On March 16, 1982, this court ruled that the ADEA was constitutional as applied to state and local government actors,[3] thereby removing the principal obstacle to enforcement of the subpoenas. Defendants continued their resistance to the subpoenas, however, disputing the scope of the information sought. In January of 1984, the district court held that the subpoenas properly related to both the age 63 and age 65 policies, and ordered compliance. The defendants subsequently announced that they would cease enforcement of the age 65 mandatory retirement policy.[4] They began the process of "conciliation" under the ADEA, and eventually offered to reinstate some of the correctional officers who were forced to retire under the mandatory retirement policies. These conciliation efforts failed. Consequently, on December 21, 1984, the EEOC filed a complaint in the district court, alleging that certain named correctional officers had been forced to retire in violation of the ADEA and that the (existing though now unenforced) County ordinance requiring mandatory retirement at age 65 itself violated the Act.[5]

Defendants conceded that the ordinance and the forced retirements violated the ADEA.[6] As a result, the only issues left for decision in the district court involved the timeliness of the claims and the relief available. On motions for summary judgment, the district court found that defendants had "willfully" violated the ADEA, and therefore applied a three-year statute of limitations and awarded liquidated damages under the Act. *See* 29 U.S.C. §§ 255 (statute of limitations), 626(b) (liquidated damages). In addition, the court equitably tolled the statute of limitations during the conciliation period. It also tolled the statute during the pendency of the subpoena enforcement action for some claims of former employees whose identities could not have been independently known to the EEOC. The court reasoned that the Com-

---

1. Eleven officers were mandatorily retired under this policy before it was altered in May of 1980.

2. Fifteen corrections officers were retired under the age 65 policy.

3. *EEOC v. Elrod,* 674 F.2d 601 (7th Cir.1982).

4. The policy remained the law of Cook County, however, as set forth in Ordinance 80–0–23.

5. In 1986, the ADEA was amended to allow a special exception for state law enforcement and firefighting personnel. 29 U.S.C. § 623(i) (effective January 1, 1987).

6. Early in the litigation defendants abandoned their only defense—that the age limit was a "bona fide occupational qualification" under the Act. *See* 29 U.S.C. § 623(f)(1).

mission could not have begun conciliation proceedings as to these employees without answers to its subpoenas. The district judge also awarded prejudgment interest at a rate of six percent, and refused to offset the award of back pay and damages by the amount of pension benefits the corrections officers had received since their individual terminations. We reverse the determination of the district court that the Sheriff's violations were "willful" within the meaning of the ADEA, and therefore reverse its holdings on liquidated damages and the applicable statute of limitations. We affirm the decision of the court on offsetting benefits, equitable tolling and pre-judgment interest.

## II.

■ The district court found the Sheriff was in willful violation of the Act after January 3, 1983, when this court decided *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). The district judge held that *Orzel* rendered reckless defendants' belief that, because federal law authorized the mandatory retirement of federal law enforcement officers at age 55, age was a bona fide occupational qualification for county corrections officers. The district court therefore applied an extended statute of limitations and awarded liquidated damages. We hold that the district court failed to fully address defendants' arguments that their violation was non-willful, and therefore remand for reconsideration of this issue.

■ Actions under the ADEA must be commenced within two years after the cause of action accrued, or within three years if the violation was "willful." 29 U.S.C. § 626(e)(1) (incorporating the relief provision of the Fair Labor Standards Act,

29 U.S.C. § 255 ("FLSA")). The district court ruled that all claims in this case accrued on the various dates of actual retirement under the "continuing violations doctrine." *See Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 121 (7th Cir.1982).[7] The parties do not dispute this ruling. The court also tolled the statute of limitations on all of the claims for the ten month period—from February 1984 to December 1984—when the EEOC and the defendants were engaged in conciliation efforts.[8] *See* 29 U.S.C. § 626(e)(2) (providing that the statute of limitations "shall" be tolled during conciliation).

The EEOC's complaint sought damages under both § 16 and § 17 of the FLSA, 29 U.S.C. §§ 216, 217, which are the applicable relief provisions under the ADEA. 29 U.S.C. § 626(b). *See Lorillard v. Pons*, 434 U.S. 575, 579–80, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978). Section 16 provides for an award of back pay, which may be doubled (the additional amount to be denominated liquidated damages) if the violation is willful. For statute of limitations purposes, a request for relief under § 16 commences only when the aggrieved individual's name first appears on the complaint. 29 U.S.C. § 216(c). Section 17, in contrast, allows an award of back pay, *see Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 156 (5th Cir.1982), but makes no provision for liquidated damages. This section does not specify whether the statute of limitations commences as to an individual complainant when that person is specifically named on the complaint or when the original complaint is filed. The district court adopted the Fourth Circuit's rule in *EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 990 (4th Cir.1980) that the statute begins to run when the complaint is filed "regardless of whether the complaint names the aggrieved individuals." The parties do not dispute this interpretation of § 17 on appeal.

---

7. While an ADEA claim generally accrues when a claimant receives notice of his pending termination, *Heiar v. Crawford County*, 746 F.2d 1190, 1194 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), the Sheriff's office in this case maintained a policy of violating its employee's ADEA rights. Where

such a policy is current, the employer has no need for protection against stale claims, and the employee may consider his action to have accrued on the date of actual retirement.

8. All of the individual claims accrued before conciliation began.

Accordingly, the district court held that the § 17 actions of all complaining correctional officers commenced on the date the original complaint was filed, December 21, 1984, and were therefore timely as to any officer who retired (and whose claim therefore accrued) after February 21, 1982 (two years and ten months earlier). The claims of all officers whom the district court held were mandatorily retired in willful violation of the Act (those who retired after January 3, 1983) were therefore held timely without regard to the additional year allowable for willful violations. The § 16 claims (allowing for liquidated damages), by contrast, commenced only when the officers' names were first added to the complaint. The 20 former officers named in the original complaint therefore made timely § 16 claims if they retired after February 21, 1982 (which again includes all those willfully retired without regard to the additional year). Any former officer first named in the amended complaint, filed on February 24, 1986, who retired after January 3, 1983, would also have presented a timely claim under § 16; however, the six officers first named in the amended complaint all appear to have retired before 1983.

In summary, so far as the record reveals the additional year the district court added (for some claims) to the statute of limitations due to willful violation of the Act had no effect on this litigation; all post-January 3, 1983, claims were timely regardless of the allowable additional year. However, the district court awarded liquidated damages to eight former officers—Boniewicz, Crawford, Goffney, Harris, Lewis, Prowell, Robinson and Waksmudski—who retired after January 3, 1983.

The Supreme Court has recently ruled that the word "willful" as used in the FLSA, 29 U.S.C. § 255(a) (made applicable to the ADEA by 29 U.S.C. § 626(e)(1)), has the same meaning for purposes of determining both the statute of limitations and liquidated damages. *McLaughlin v. Rich-land Shoe Co.,* — U.S. —, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128 n. 21, 105 S.Ct. 613, 625 n. 21, 83 L.Ed.2d 523 (1985) (noting the pre-*McLaughin* division between courts of appeals on whether the standard was identical). An employer has committed a willful violation if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." *McLaughlin,* 108 S.Ct. at 1681. Applying this standard, the district court found that once our *Orzel* decision was released, defendants were reckless in their belief that their retirement policy was permissible.[9]

Defendants claimed that they believed that being less than 63 (or 65) years old was a bona fide occupational qualification ("BFOQ") for a Cook County corrections officer. They allegedly held this belief in part because a federal statute, 5 U.S.C. § 8335(b), establishes a mandatory retirement age of 55 for federal corrections officers. In *Orzel,* this court affirmed a magistrate's finding that the city of Wauwatosa, Wisconsin willfully violated the ADEA when it terminated an Assistant Fire Chief upon his attaining the city's mandatory retirement age of 55. In rejecting the city's contention that age 55 constituted a BFOQ under the Act, we stated that the fact that federal law permits the mandatory retirement of federal firefighters at 55 does not by itself establish as a matter of law "that the same retirement age is a valid BFOQ ... for a wholly different group of employees, operating under different working conditions and performing significantly different job functions." *Orzel,* 697 F.2d at 749. As we noted, there was no evidence that Wauwatosa's firefighters carried out tasks substantially similar to federal personnel. Furthermore, federal retirement programs are not subject to the ADEA. To establish a BFOQ defense under the Act, defendants

---

**9.** Defendants also asserted that they believed mandatory retirements were legal because the ADEA could not constitutionally be applied to state and local governments. We agree with the district court that this belief was reasonable until March 16, 1982, when this court decided *EEOC v. Elrod,* 674 F.2d 601 (1982), specifically upholding the applicability of the ADEA to state and local governments.

must demonstrate "by objective and credible evidence," *id.* at 750, that their compulsory retirement rule qualifies as a "bona fide occupational qualification reasonably necessary to the normal operation of" their business. 29 U.S.C. § 623(f)(1). Non-federal retirement policies must be "reasonably necessary" to the operation of the business in question, while federal policies need only be rationally related under the equal protection clause. *Orzel* clearly holds, as the district court noted, that the propriety of a federal age 55 retirement policy could not automatically establish the validity of the defendants' retirement scheme.

In *Orzel*, we further held that the magistrate's finding of a willful violation was not clearly erroneous. The magistrate had carefully reviewed the circumstances surrounding Orzel's termination and analyzed defendant's state of mind at that time. We notably relied upon the fact that Orzel's counsel informed the Mayor of Wauwatosa over a month before Orzel was mandatorily retired that it was his "considered opinion after carefully researching and reviewing all prior precedents concerning this issue," that if the City forced Orzel to retire it would be in "direct violation" of the Act. *Id.* at 759. We held that in the circumstances of that case the City "knew or reasonably should have known" that it was violating the requirements of the Act.

As *Richland Shoe* has clarified, however, we must determine in this case whether the sheriff knew of or showed reckless disregard for the illegality of his conduct. The district court failed to consider all of defendants' arguments for their belief in the validity of an age 63 or 65 retirement policy, and therefore did not properly evaluate whether plaintiffs had made a sufficient showing of a reckless or knowing violation. That an employer has not established a BFOQ does not necessarily mean that its actions were willful under the Act. "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," then its action cannot be considered willful. *Richland Shoe*, 108 S.Ct. at 1682 n. 13. We have held since *Orzel* that an employer does not commit a

willful violation where it could not have known when it retired employees under a mandatory policy "that it would not be able to gather enough evidence to put on a convincing case at trial." *Heiar v. Crawford County*, 746 F.2d 1190, 1201 (7th Cir. 1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Rather, "[p]laintiffs must show that the County should have known it was violating the Act." *Id.* The district court did not cite or discuss *Heiar* in its consideration of the willfulness issue.

■ Based on *Orzel*, the district court rejected defendants' argument that federal law established a "per se" BFOQ. Defendants also argued, however, that age was a "de facto" BFOQ for county corrections officers. Then–Sheriff Elrod introduced some evidence of a belief that the duties and responsibilities of corrections officers mandated retirement at age 63 or 65. Defendants submitted evidence of their hiring, training and evaluations processes in support of the genuineness of their belief in the necessity of such a retirement policy. It is true that defendants did not undertake a study into the effects of aging on corrections officers' job performance. However, the burden was on the EEOC to show willfulness, and defendants are not required to produce such evidence to prove that their belief in the validity of an age 63 or 65 BFOQ was not reckless. Further, the federal retirement policies, while insufficient to *establish* a BFOQ as a matter of law, were certainly *evidence* of the propriety of an age 63 or 65 BFOQ in this case which might have been reasonably relied upon by defendants. *See Williams v. Hughes Helicopters, Inc.*, 806 F.2d 1387, 1392 (9th Cir.1986).

Although defendants' submissions were insufficient to establish a BFOQ, plaintiffs must show that defendants should have known that the retirement policies were unjustifiable. Because the district court wrongly considered *Orzel* dispositive of this case, and because it failed to consider whether defendants should have known they could not support their position at trial, we reverse the finding of a willful

violation, vacate the award of liquidated damages, and remand on this issue. The district court should determine whether defendants were reckless in their belief that they could establish the legality of an age 63 or 65 retirement policy.

## III.

### A.

The defendants also contend that the district court erred in refusing to offset against the back pay award the amount of pension benefits the officers have received since their retirement. The Retirement Board of Cook County Employees' Annuity and Benefits Fund ("Retirement Board"), a state agency established pursuant to Ill. Rev.Stat. ch. 108½, ¶ 9–101 *et seq.*, receives contributions in part directly from Cook County, the employer in this case. *See* Ill.Rev.Stat. ch. 108½, ¶¶ 9–169, 9–170, 9–176(b), 9–182, 9–183. In refusing to offset pension benefits paid by the Retirement Board, the district court held that they were collateral source benefits similar to unemployment benefits. The court noted that the Supreme Court has held that unemployment benefits are subject to the collateral source rule under the same back pay recovery provisions at issue here, even though the unemployment benefits were paid from a fund partially financed through employer taxation. *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951). *See Perry v. Larson*, 794 F.2d 279, 286 n. 3 (7th Cir.1986) (noting circuit split on whether unemployment compensation payments should be deducted from back pay awards). The district court wrote that this court's decision in *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1428–29 (7th Cir.1986) indicated a growing reluctance to permit judges to deduct benefits from back pay awards, especially where a plaintiff has paid for the benefits during his or her employment. The former corrections officers were therefore awarded not only the pay they would have received had they not been forced to retire, but were also allowed to keep their pension

benefits for that same time period. In a sense, they enjoyed "the rewards from the employer both of working and not working." *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 (4th Cir.1985). The court also ordered the defendants to make such payments to the Retirement Board "as are necessary to restore to the claimant the pension he or she would have received had he or she been employed during the period" of unlawful forced retirement.[10]

The defendants argue that federal courts have generally offset pension benefits against back pay awards, and that refusal to offset provides the plaintiffs with an undeserved windfall. Although they concede that unemployment compensation is generally not offset against such awards, they contend that pension benefits should be treated differently, because unemployment benefits differ from pension benefits in that they may be recouped under Illinois law, and because unemployment is a vast and complicated system whose funds are not directly attributable to the employer.

The EEOC contends that the pension plan is administered by an independent state agency and serves a social policy separate from the ADEA, and that it is therefore a collateral source. Further, to the extent that the refusal to offset provides plaintiffs with a windfall, the EEOC contends that it is better to give the windfall to the victims of discrimination than the perpetrator. We agree with the EEOC that the refusal to offset was not an abuse of discretion.

### B.

"The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice." *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir.1986) (citation omitted). The rule also prevents one who "pays for insurance against an accident" from being forced to "donate the proceeds to the person who causes the accident." *Hunter*, 797 F.2d at 1429. Similarly, "one who intends to bene-

---

**10.** Defendants apparently do not appeal this order.

fit the accident victim should not be compelled to benefit the insurer instead." *Id.* The collateral source rule thus focuses on what the tortfeasor and collateral source should pay, not on what the plaintiff should receive. *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 83 (3d Cir.1983). Indeed, its most obvious effect is that, in the interest of other social policies, it allows plaintiffs to be made more than whole for wrongs committed against them.[11] If pension benefits are collateral, it is clear that a district court has discretion to deduct or not deduct them from an ADEA back pay award. *Hunter,* 797 F.2d at 1429; *Orzel,* 697 F.2d at 756.

Funds supported in part—but not entirely—by contributions from the defendant are generally considered collateral. *EEOC v. Sandia Corp.,* 639 F.2d 600, 625 (10th Cir.1980); *EEOC v. Enterprise Association Steamfitters Local No. 638,* 542 F.2d 579, 591 (2d Cir.1976), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). In *Gullett Gin,* 340 U.S. at 364, 71 S.Ct. at 339, the Supreme Court upheld the NLRB's refusal to offset unemployment benefits against an award of back pay under the NLRA (which has the same back pay provision as the ADEA). The Court found that the employer was not the direct source of the benefits, and held that the payments were collateral. The payments were made "by the state out of state funds derived from taxation." *Id.* Even though the defendant paid taxes to the state, and therefore helped to create the state unemployment fund, the "payments to the employees were not made to discharge any liability or obligation of [the employer], but to carry out a policy of social betterment for the benefit of the entire state." *Id.* Defendants here argue that they are the direct source of the pension benefits. They reason that *Gullett Gin* is inapposite because unemployment benefits may be recouped by the State of Illinois, Ill.Rev.Stat. ch. 48, ¶ 490(D), while pension benefits may not be recouped by the Retirement Board.

The cases most thoroughly analyzing this issue emanate from the Third Circuit,

which has adopted a flat rule forbidding the setoff of pension and unemployment benefits against Title VII and ADEA back pay awards. *Gelof v. Papineau,* 829 F.2d 452 (3d Cir.1987); *Maxfield v. Sinclair Int'l,* 766 F.2d 788 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Dillon v. Coles,* 746 F.2d 998 (3d Cir.1984); *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214 (3d Cir.1984), *vacated and remanded on other grounds,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985); *Craig,* 721 F.2d 77. The Third Circuit has concluded that pension plan benefits are "indistinguishable" from unemployment compensation benefits for the purpose of offset because both "are designed to serve social policies independent of those served by back pay awards. The employer contributes to both forms of benefits either directly or indirectly." *McDowell,* 740 F.2d at 217.

The *Dillon* court allowed a narrow exception to the no-offset rule when a state defendant may recoup benefits under a state statute. The court reasoned that in such a situation it would be "wasteful of public funds" to refuse to offset and thereby force the state to institute a separate suit to recoup part of the back pay award. *Dillon,* 746 F.2d at 1007. Where a state defendant may not recoup such funds, however, the back pay award may not be offset. *Gelof,* 829 F.2d at 455. Even though the state of Delaware reimbursed the state unemployment fund on a dollar-for-dollar basis for state employees, the *Gelof* court refused to order an offset of plaintiff's unemployment compensation against his back pay award. The court noted that because the source of all state funds was taxation, "all payments from the fund are a form of social insurance supported by taxation," *id.,* and Delaware was thus a collateral and not a direct source of the funds.

In other circuits, pensions received as a result of an unlawful termination have generally been offset against back pay awards.

---

11. Because reimbursement awards are made without consideration of collateral losses, "manifestly no consideration need be given to collat-

eral benefits which employees may have received." *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951).

*Fariss,* 769 F.2d at 966.[12] In only two cases, however, have appellate courts reversed a district court's decision not to offset "retirement" or "layoff" benefits. *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 209–10 (5th Cir.1986); *Sandia,* 639 F.2d at 626–27. Both of these cases are clearly distinguishable from the present one. *Sandia* involved a layoff allowance direct from the employer. The Second Circuit noted that it was "open to question" whether this was "really a true collateral benefit." 639 F.2d at 626. *Guthrie* held that payments from Penney's own retirement fund were direct from the employer and therefore not collateral.

We do not agree with defendants' arguments that the pension payments in this case should be offset. First, the pension benefits may be viewed as *earned* by the claimants and therefore not paid by the employer at all. Like an insurance policy provided by an employer, the pension benefits here were part of the claimants' compensation. *See In re Air Crash Disaster Near Chicago, Illinois, On May 25, 1979,* 803 F.2d 304, 308 (7th Cir.1986) ("[I]nsurance was as much a part of the compensation [the former employee] received from his employer as were his salary, fringe benefits, *and pension benefits*") (emphasis added). Second, the payments to the Retirement Board were made to carry out a state policy under state law independent of ADEA back pay awards; they did not discharge any direct obligation from the Sheriff's office to the claimants. *See Gullett Gin,* 340 U.S. at 364, 71 S.Ct. at 339; *Maxfield,* 766 F.2d at 794. Further, the County was only one contributor to the fund; the fund is a separate state agency. Finally, under the reasoning of *Dillon* and *Geloff,* the fact that pension payments may

not be recouped actually cuts *against* defendants—unemployment benefits are offset when they *can* be recouped, for reasons of efficiency.

The Sheriff's office would have had to contribute to the Retirement Board and pay claimants' salaries if it had not wrongfully retired the corrections officers. The collateral source rule should not afford a "discrimination bonus" by allowing an adjudicated violator of the ADEA to pay less than it would have paid had it acted lawfully. It is true that the former corrections officers have received both the benefits of working and not working, and as *Hunter* pointed out, perhaps (if defendants had suggested this result) claimants should be required to return to the Retirement Board the pension benefits they received. 797 F.2d at 1429. But as between conferring a windfall on claimants or defendants, claimants are the logical choice. The district court's refusal to offset was not an abuse of discretion.

## IV.

■■■ The district court further awarded prejudgment interest at the IRS adjusted prime rate to timely claimants who were not entitled to liquidated damages.[13] In awarding the interest the court noted that the retired officers had probably been forced to borrow money once they were deprived of their wages. Defendants do not appeal the decision to award prejudgment interest, only the rate chosen. The IRS prime rates varied over the relevant period from 6% to 20%. Defendants contend that the district court should have applied the Illinois post-judgment interest rate of 6% applicable to local government units. Ill.Rev.Stat., ch. 110, ¶ 2–1303. We

---

**12.** *See also Kossman v. Calumet County,* 849 F.2d 1027 (7th Cir.1988) (no abuse of discretion where district court considered benefits paid by retirement fund as mitigation of award of lost wages).

**13.** A district court in this circuit may not award both prejudgment interest and liquidated damages in an ADEA action. *Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1335–37 (7th Cir. 1987), *vacated and remanded on other grounds,* —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223

(1988); *Kossman v. Calumet County,* 800 F.2d 697, 702–03 (7th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987). *Contra Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1102 (11th Cir.1987) (both prejudgment interest and liquidated damages allowable); *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd on other grounds,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (same).

uphold the designated rates of prejudgment interest as within the discretion of the district court. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 600–03 (1st Cir.1987); *EEOC v. Rath Packing Co.*, 787 F.2d 318, 334 n. 14 (8th Cir.), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); *EEOC v. County of Erie*, 751 F.2d 79, 82 (2d Cir.1984).

Prejudgment interest is designed to make the plaintiff whole by compensating her for the loss of the time value of her money. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1336 (7th Cir.1987), *vacated and remanded on other grounds*, —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). The adjusted prime rate is a reasonable indicator of the value of the use of money. *County of Erie*, 751 F.2d at 82. Defendants argue that because there was no evidence regarding whether the claimants actually borrowed any money, and because it is doubtful that they could have borrowed at the prime rate, the district court abused its discretion. *Cf. Heiar*, 746 F.2d at 1202–03 (remanding case for proper exercise of discretion where district court refused to award prejudgment interest based on theory, unsupported by record, that award of lump sum to plaintiffs gave them investment income they otherwise never would have had).

To the extent that it may be relevant for purposes of awarding prejudgment interest whether claimants had to borrow during their forced retirement, this would relate to the initial decision whether to award interest at all, not the rate at which to grant interest. Defendants have waived their objection to the decision to grant prejudgment interest. We hold that the prime rate employed by the district court is a reasonable approximation of the time value of money, and that the court's award of interest at that rate was therefore not an abuse of discretion.

## V.

We also uphold the district court's decision to toll the statute of limitations for various claims.

## A.

■ As noted in part II, *supra,* the district court tolled the statute of limitations for all claims during the ten months of statutory conciliation. *See* 29 U.S.C. § 626(e)(2). In its September 12, 1986, opinion granting summary judgment to the EEOC, the court stated that the "defendants concede ... that the statute of limitations is tolled for the ten month period between February 1984 and December 1984 when the EEOC and defendants were engaged in conciliation efforts." Defendants claim on appeal that because the subpoenas were served in 1979 before the advent of an age 65 policy, the period of conciliation related only to claims under the age 63 policy, and cannot be the basis for tolling the statute of limitations for claims arising under the age 65 policy.

We reject this argument. The EEOC's investigation and conciliation did not (and in many cases could not—*see* part V.B. *infra*) begin until after subpoena enforcement. By that time, defendants had raised their mandatory retirement age to 65. The investigation and conciliation covered all mandatory retirements of corrections officers which allegedly violated the ADEA, regardless of which policy was applied to a particular claimant. Further, defendants offer no argument why the district court's finding that they conceded the propriety of tolling all claims for the period of conciliation was clearly erroneous. Accordingly, we affirm the ten month tolling for all claims.

## B.

■ The district court also tolled the statute of limitations on the § 16 claims (allowing liquidated damages) of six officers for the period between the date the subpoenas were served (September 11, 1979) and the date this court held the subpoenas were enforceable (March 16, 1982). The court reasoned that the EEOC is required to undertake good faith conciliation efforts on behalf of aggrieved employees before it files an ADEA action, and that it must necessarily know on whose behalf it

is to conciliate. The Commission may therefore use its subpoena powers to identify victims of discrimination. *See* 29 U.S.C. § 209. Because the defendants refused to comply with the subpoenas, the EEOC was unable to identify and name in its complaint six employees (claimants Ardolino, Bishop, Bubbet, Ders, Ross and Tolliver) not otherwise known to the Commission who retired under the policies. Tolling was therefore appropriate, the court held, because defendants had actively concealed information necessary to a viable court action. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291–92 (7th Cir. 1986).

The court found, however, that such tolling was appropriate only for the § 16 claims, which are not deemed commenced until the employee's name appears on the complaint. Because § 17 claims begin on the date the original complaint is filed regardless of whether specific victims of discrimination are named, it was unnecessary for the Commission to obtain the names of affected employees in order to file a § 17 claim on their behalf. Nothing therefore precluded the Commission, the district court held, from bringing § 17 claims on behalf of those employees whose names it did not actually add until it filed the amended complaint on December 21, 1984. "The EEOC could and should have brought a § 17 action soon after it discovered, from those who filed charges with the EEOC, that there was age discrimination." The court also held that tolling was inappropriate for the § 16 claims of persons whose identities were independently known to the Commission. Because defendants admitted to their retirement policies at the beginning of the subpoena enforcement proceedings, and because the Commission already knew the names of twenty employees affected by the policies, the court held that the EEOC could have begun conciliation as to these persons without receiving answers to its subpoenas detailing possible defenses.

Defendants contend that tolling of *any* claims for the subpoena enforcement period was inappropriate. They essentially reason that their objections to the nature and breadth of the EEOC subpoenas were

based on reasonable arguments, including constitutional contentions, and did not constitute "wrongdoing" so as to warrant an equitable modification of the statute. The Commission contends that the purpose of the tolling was not to punish the employer, but to ensure that employer-caused delay in providing information (for whatever reason) does not frustrate the ADEA by adversely affecting the claims of victims of age discrimination.

The Commission also cross-appealed, arguing that the district court should have tolled *all* of the claims—including the § 17 claims and the § 16 claims of employees known to the EEOC. Defendants' refusal to comply with the subpoenas, the Commission argues, prevented it from evaluating the validity of the defendants' BFOQ defense. This allegedly impeded the EEOC's investigation to such an extent that it was impossible to determine whether the defendants had committed any ADEA violations. The EEOC further contends that the court should have tolled the claim of Bernice Macys from the date of her retirement on August 30, 1980, until the Commission discovered her claim. Defendants never disclosed Macys' identity even after the subpoenas were enforced by court order, and her claim was therefore not brought to the attention of the EEOC until September 26, 1986. The court held that defendants' failure to disclose Macys' claim was the result of poor recordkeeping, which the court characterized as "regrettable negligence" that did not justify tolling.

█ Although statutes of limitations protect defendants from the burden of defending stale claims, this interest may be outweighed "where the interests of justice require vindication of the plaintiff's rights." *Burnett v. New York Central R.R.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965). We have held that courts may equitably modify the ADEA's limitations periods where appropriate. *See, e.g., Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1112 (7th Cir. 1984); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978). It is appropriate to toll the statute of limi-

**394**

tations until a reasonable plaintiff should have known facts that would support a charge of discrimination. *Mull*, 784 F.2d at 291; *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 411 (7th Cir.1984). At least two district courts have tolled the ADEA's statute of limitations where employers have refused to comply with subpoenas. *See EEOC v. Gladieux Refinery, Inc.*, 631 F.Supp. 927, 936 (N.D.Ind.1986); *EEOC v. City of Memphis*, 581 F.Supp. 179, 182 (W.D.Tenn.1983).

 It was not an abuse of discretion for the district court to toll the § 16 claims during the subpoena enforcement period. The EEOC could not reasonably have known the identities of aggrieved employees until disclosed by defendants. The court correctly held, however, that the Commission should have filed suit on the § 17 claims soon after learning that an under-70 retirement policy existed and that a number of employees had been forced to retire under it. The district court also did not abuse its discretion in refusing to toll Macys' claim.

### VI.

In summary, we reverse the district court's finding that the defendants willfully violated the ADEA. We remand this case for a reconsideration of the willfulness of the defendants' violation and a redetermination of the claimants' damages consistent with this opinion. The judgment of the district court is affirmed in all other respects.

